```
               IN THE DISTRICT COURT OF THE UNITED STATES
                    FOR THE DISTRICT OF SOUTH CAROLINA
                           CHARLESTON DIVISION
```

| | |
|---|---|
| Thomas T. Bryant, )<br>)<br>                Plaintiff, )<br>)<br>v. )<br>)<br>Warden W. Eagleton, AW R. )<br>McFadden, and Nurse Supervisor )<br>A. Smith, )<br>)<br>                Defendants. )<br>) | Civil Action No.2:13-cv-01045-MGL-BHH<br><br>**ORDER AND<br>REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

      The Plaintiff, currently a pretrial detainee proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon Defendants' Motion for Summary Judgement (Dkt. No. 35) and Plaintiff's Motion to Amend (Dkt. No. 29).

      Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

      Plaintiff filed the instant Complaint on or about April 15, 2013, against three defendants: Warden W. Eagleton, Associate Warden R. McFadden, and Nurse Smith. (See generally Dkt. No. 1.) Defendants answered the Complaint on July 10, 2013; Plaintiff filed a Motion to Amend his Complaint on or about July 27, 2013. (Dkt. No. 25; Dkt. No. 29.) On August 28, 2013, Defendants filed a Motion for Summary Judgment. (Dkt. No. 35.) By order filed August 28, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 36.) Plaintiff filed several discovery motions. (See Dkt. No. 44; Dkt. No. 50; Dkt. No. 51; Dkt. No. 52; Dkt. No. 62; Dkt. No. 65; Dkt. No. 73; Dkt. No. 74; Dkt. No. 75.) Plaintiff filed his Response in Opposition to

the Motion for Summary Judgment on or about November 9, 2013. (Dkt. No. 64; see also Dkt. No. 69; Dkt. No. 70.)

## PROCEDURAL FACTS

Although Plaintiff is currently a pretrial detainee at the Alvin S. Glenn Detention Center, he complains about events that occurred while he was an inmate of the South Carolina Department of Corrections ("SCDC") at Evans Correctional Institution ("Evans" or "ECI"). (See Dkt. No. 1.)[1] Plaintiff, a "paraplegic paralyzed from the chest down" and "confined to a wheelchair," states that the instant action is "about [him] going seven days without [his] medical supplies, which [Plaintiff is] suppose[d] to receive every Friday." (Dkt. No. 1 at 3 of 6.) Plaintiff alleges that on Friday, June 15, 2012, the nurse brought Plaintiff's medication to him but failed to bring Plaintiff's medical supplies. (Id.) According to Plaintiff, although he received one tube of K-Y jelly and four ounces of antimicrobial soap, he should have also received the following medical supplies that Friday: fourteen condom catheters, fourteen French catheters, one bed bag, one leg bag, seven chucks, and fourteen rubber gloves. (Id.) Plaintiff alleges that he asked Sergeant Hayes (not a defendant) to go to medical to pick up Plaintiff's medical supplies, and when Hayes returned, Hayes told Plaintiff that Defendant Nurse Supervisor A. Smith told Hayes that Plaintiff would have to wait until Monday and see Dr. Drago. (Id.) Plaintiff states he did not know why he needed to see Dr. Drago because Plaintiff's medical condition "ha[d] not changed." (Id.)

Plaintiff alleges that Monday "came and [he] did not see Dr. Drago nor did [Plaintiff] receive [his] medical supplies." (Id.) Plaintiff contends that he urinated on himself numerous times over that weekend. (Id.) Plaintiff further alleges,

---

[1] Based on the South Carolina Court of Appeals' description of the factual and procedural background of Plaintiff's criminal case, it appears that Plaintiff has twice had his criminal conviction overturned. See State v. Bryant, 391 S.C. 225, 705 S.E.2d 465 (Ct. App. 2010).

2

> My bladder is full and its painful causing muscle spasms in my stomach giving me sweats because I have no French catheter, in and out catheter to drain my bladder. I hit on my bladder lightly to get some urine out so it's not so painful. I did void a little urine. I cannot drink water like I am suppose[d] to because the fuller my bladder gets the worse it hurts. I had to cut back on eating food because I have no rubber gloves to use with my K-Y jelly so I can help myself have a bowel movement.

(Id. at 3-4 of 6.) According to Plaintiff, Defendant Nurse Supervisor A. Smith and Nurse Johnson (not a defendant) "made sure [he] went without [his] medical supplies." (Id. at 4.) Plaintiff alleges he asked Nurse Stokes (not a defendant) about his medical supplies on Monday evening, and Stokes told Plaintiff she would check on them; later that night Plaintiff "had a[n] accident and [his] bowels moved." (Id.) Plaintiff states cleaned up the best he could, but he "was a mess," and "[t]he CO's would not let [him] shower." (Id.) Plaintiff states, "I was really upset[;] my nerves were shot. I was frustrated, humiliated, embarrassed, ashamed[,] and hurt[,] unable to care for myself." (Id.)

Plaintiff alleges that on Tuesday, he told CO Quick that he "was not gonna let him lock [the] flap back until [Plaintiff] receive[d his] medical supplies." (Id.) According to Plaintiff, both CO Quick and Nurse McQueen (not defendants) "told [him] that Nurse A. Smith the supervisor over medical would not send [Plaintiff's] medical" to him. (Id. at 5 of 6.) Ultimately, Plaintiff alleges that Quick sprayed Plaintiff three times with mace before Plaintiff let go of the flap. (Id.) According to Plaintiff, he did not receive his medical supplies until Friday, June 22, 2012. (Id.)

In the "Relief" section of his Complaint, Plaintiff states that he seeks "[m]onetary compensation for pain and suffering[,] embarrassment[,] and mental anguish." (Id. at 6 of 6.)

3

**DISCUSSION**

As noted above, two motions are currently before the Court: Plaintiff's Motion to Amend (Dkt. No. 29) and Defendants' Motion for Summary Judgment (Dkt. No. 35). The undersigned will address Plaintiff's Motion to Amend (Dtk. No. 29) first.

I. Plaintiff's Motion to Amend (Dkt. No. 29)

Plaintiff filed the instant Motion to Amend on or about July 27, 2013. (Dkt. No. 29.) Defendants oppose amendment, contending that the "proposed Amended Complaint is essentially the same as the original Complaint and does not contain any new allegations." (Dkt. No. 31 at 1-2.)

Rule 15(a) of the Federal Rules of Civil Procedure allows a plaintiff, subject to certain time limitations, to amend a pleading once as a matter of course. See FED. R. CIV. P. 15(a)(1). Otherwise, a plaintiff may amend the complaint only with leave of the court or with the consent of the defendant. See id.; see also Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006). Rule 15(a) provides, however, that leave to amend should be "freely give[n] . . . when justice so requires." Id. "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." Laber, 438 F.3d at 426 (citing Conley v. Gibson, 355 U.S. 41, 48 (1957); Ostrzenski v. Seigel, 177 F.3d 245, 252-53 (4th Cir. 1999)). The Fourth Circuit has interpreted "Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" Id. at 426-27 (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)).

There is no evidence that Plaintiff filed the instant motion in bad faith, and amendment would not prejudice Defendants because–as Defendants indicate–the proposed Amended Complaint is nearly identical to the original Complaint. Plaintiff's Motion

4

to Amend should therefore be denied only if the amendment is futile. And in this case, although Plaintiff's proposed Amended Complaint does not add much to the instant case, Plaintiff does make a few additional allegations in his proposed Amended Complaint that do not appear in his original Complaint. For example, Plaintiff alleges in his proposed Amended Complaint that he "was in so much pain [he] couldn't sleep at night due to . . . not having [his] medical supplies." (Dkt. No. 29 at 3 of 7.) He also alleges that he "caught a urinary" tract infection as a result of not having his medical supplies. (Id. at 4 of 7.)

Because Plaintiff's proposed amendment is not futile, his Motion to Amend (Dkt. No. 29) is granted. The Clerk is directed to file Dkt. No. 29 as Plaintiff's Amended Complaint, and attach his original Complaint (Dkt. No. 1) to the Amended Complaint. Defendants need not file an Answer to the Amended Complaint; the Court deems Defendants Answer at Dkt. No. 25 also the Defendants' Answer to the Amended Complaint.

II. Defendants' Motion for Summary Judgment (Dkt. No. 35)

Defendants contend they are entitled to summary judgment for several reasons, one of which is that "Plaintiff cannot show that his medical problems were serious or life threatening or that the Defendants were deliberately indifferent to his health or safety." (Dkt. No. 35-1 at 4 of 16.)

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is

to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

The undersigned recommends granting summary judgment to Defendants Eagleton and McFadden. There is no evidence in the record–and no allegation–that these Defendants took part in the alleged denial of medical supplies to Plaintiff. Instead, Plaintiff's case against them appears to be based on the principles of respondeat superior: Plaintiff alleges that Defendant Eagleton, the Warden of Evans, "is legally responsible for the operation of Evans . . . and for the welfare of all the inmates of that prison." (Dkt. No. 29 at 2 of 7.) Similarly, Plaintiff alleges that Defendant McFadden, an Associate Warden at Evans, was–at all times relevant–"over medical." (Id.)

Defendants Eagleton and McFadden are entitled to summary judgment because the doctrines of vicarious liability and respondeat superior are generally not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-29 (4th Cir. 1977); see also Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 (1978) (holding "that a municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"); Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987) ("[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement."). However, "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). In such a case, liability "is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. (citations omitted). A plaintiff in a supervisory liability case "assumes a heavy burden of

proof," as the plaintiff "not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices." Id. at 373 (internal quotation marks and citations omitted). Generally speaking, a plaintiff cannot satisfy this heavy burden of proof "by pointing to a single incident or isolated incidents," but "[a] supervisor's continued inaction in the face of documented widespread abuses . . . provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." Id. (citations omitted). There is no evidence or allegation of personal involvement in this isolated incident, and Plaintiff cannot meet the "heavy burden" to establish liability on the part of either Defendant Eagleton or Defendant McFadden. See Slakan, 737 F.2d 368; see also Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution."); Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (in a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations."). The undersigned therefore recommends granting summary judgment to these two Defendants.

    Because Plaintiff has alleged that Defendant Smith was personally involved in the denial of his medical supplies, the undersigned addresses Plaintiff's claim against her separately. In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal citations omitted). To prevail on an Eighth Amendment deliberate indifference claim, "a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with

a sufficiently culpable state of mind." Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." Id. It is well-settled that mere negligence does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06; Grayson v. Peed, 195 F.3d 692, 695-96 (4th Cir. 1999); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (holding that "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim pursuant to § 1983).

The instant case is, as Plaintiff states in his original Complaint, a case about the alleged denial of medical supplies for a seven-day period. (See generally Dkt. No. 1.) Defendants attached the Affidavit of Defendant Smith to their Motion for Summary Judgment. (See Dkt. No. 35-2.) Smith states in her Affidavit that Plaintiff was transferred from Manning Correctional Institution to Evans on June 7, 2012. (Dkt. No. 35-2 at 3 of 6.) She further states,

> According to the Evans medical records (Exhibit 1), on June 9, 2012, Plaintiff was issued 7 40mm condom caths, 7 intermittent straight caths, 14 red rubber surgilube, 5 chux, 3 pairs of gloves, 1 leg bag and 1 bed bag. These supplies were issued to Plaintiff again on June 15, 2012, and on June 22, 2012. On June 25, 2012, the SCDC doctor ordered that the number of 40mm condom caths issued to Plaintiff be increased from 7 to 14. Plaintiff continued to receive these supplies each week until his release from SCDC on October 11, 2012, and transfer to the Alvin S. Glenn Detention Center (Richland County) in Columbia, South Carolina.

(Id.) According to Smith, "[a]t no time was Plaintiff denied medical supplies." (Id.) She also states,

> The Defendants, Warden Eagleton, Associate Warden McFadden and I, did not make any decisions regarding Plaintiff's medical care or the amount of medical supplies Plaintiff should receive.
> According to the SCDC medical records, during the 7 days Plaintiff claims that he did not receive his medical supplies from June 15, 2012, to

8

> June 22, 2012, Plaintiff did not experience any serious or life threatening medical problems that required any emergent or urgent medical care.

(Id.)

Although Defendants have presented evidence that Plaintiff received the at-issue medical supplies on June 15, 2012, the undersigned assumes–for purposes of the instant Report and Recommendation–that Plaintiff went without his medical supplies from June 15, 2012, to June 22, 2012. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) ("[A] a *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge."). In Ferebee v. Cejas, 161 F.3d 2 (4th Cir. 1998) (unpublished table decision), the Fourth Circuit addressed the plaintiff's claims that defendants' "seven month failure to supply [the plaintiff] with needed medical supplies including new colostomy bags, colostomy wafers, colostomy paste, prep pads, skin cleanser, and urine bags" constituted a violation of his constitutional rights. Ferebee, 161 F.3d 2, 1998 WL 647000, at *1. The district court granted the defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; the Fourth Circuit reversed. See generally Ferebee, 161 F.3d 2. The Fourth Circuit stated,

> To meet the objective component of the deliberate indifference test, Ferebee alleged that he had two objectively serious medical needs: (1) the need for further surgery to remove his colostomy bag, urine bag, and scar tissue and (2) the need for access to medical supplies. Assuming that this is an accurate assessment of his medical condition, as we must at this early stage of the proceedings, those allegations are sufficient to meet the objective part of the deliberate indifference test.
> Ferebee also made several allegations regarding Dr. Cejas that lead us to conclude that he sufficiently pleaded the subjective elements of a deliberate indifference claim. Ferebee specifically stated that he was treated with gross deliberate indifference by the jail's medical staff. Further, he alleged that when he asked Dr. Cejas why he had not been taken to the hospital for his surgeries, Dr. Cejas replied, "It's your fault, live with it!" In addition, Ferebee did allege that the jail's medical staff failed to provide him, in spite of repeated requests, with necessary medical and sanitary supplies

> for use with his colostomy and urine bags. We find that this is sufficient for a pro se litigant to state a claim of deliberate indifference.

Id. at *2. The Fourth Circuit concluded that "dismissal of [the plaintiff's] entire action at th[at] stage of litigation was improper" and remanded the case for further proceedings. Id. at *3.

The instant case against Defendant A. Smith is easily distinguishable from Ferebee. In Ferebee, the district court dismissed for failure to state a claim; the instant case is before the court upon Defendants' Motion for Summary Judgment. In addition, the plaintiff in Ferebee complained about the denial of medical supplies for a period of seven months; the instant case is about the alleged denial of medical supplies for a period of seven days. The undersigned concludes this case is instead similar to Ayala v. Terhune, 195 Fed. App'x 87 (3d Cir. 2006). In that case, the plaintiff contended the defendants violated his constitutional rights by, *inter alia*, "denying [him] full access to the medical supplies necessary to manage his colostomy; refusing [him] access to the medical waste bin to dispose of used colostomy supplies and bags, requiring [him] to store the used materials in his cell instead; and failing to order timely refills of medically necessary and prescribed medications." Ayala, 195 Fed. App'x at 90. The Third Circuit stated,

> [A]s the District Court correctly determined, sporadic delays (not exceeding four days at any one time) in providing prescription medication to [the plaintiff] in 2002–2003, do not amount to deliberate indifference on the part of the named defendants. As for the failure to provide a new colostomy bag every day, even assuming that it is medically necessary for colostomy bags to be changed daily, the record reveals no pattern of deprivation that rises to the level of deliberate indifference. [The plaintiff] admitted that the typical practice at the prison was to provide him a thirty-day supply of colostomy bags. Although the defendants may have failed to provide a new colostomy bag to [the plaintiff] on occasion, at best, their failure amounts to negligence, not deliberate indifference.

Id.; see also Mooney v. Dallas County, Civ. A. No. 3-05-CV-1432-N (ECF), 2008 WL 151250, at *9 (N.D. Tex. Jan. 14, 2008) ("Since the delay in receiving colostomy care

10

supplies appears to have been only temporary, it would not amount to deliberate indifference.").

Even assuming that Plaintiff did not receive medical supplies for seven days, the undersigned recommends granting summary judgment to Defendant Smith. This case is not about repeated failures of Defendant Smith to provide Plaintiff's medical supplies to him; Plaintiff, who generally received supplies on Fridays, complains about not receiving his supplies on one Friday. Plaintiff did receive his medical supplies the following Friday. Although it is unfortunate that Plaintiff went seven days without receiving medical supplies, the undersigned cannot conclude that Defendant Smith acted with deliberate indifference towards Plaintiff's serious medical needs.[2] See Ayala, 195 Fed. App'x at 90.

In addition, the undersigned recommends finding that Defendant Smith is entitled to qualified immunity. The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). As detailed above, the alleged denial of medical supplies was for a

---

[2]As discussed above, the undersigned assumes for purposes evaluating Defendants' Motion for Summary Judgment that Plaintiff did not receive medical supplies on June 15, 2012. However, the medical records submitted by Defendant Smith indicate Plaintiff did receive his supplies that day. (See Dkt. No. 35-2 at 3 of 6; Dkt. No. 35-2 at 6 of 6.) Although Plaintiff disputes the accuracy of these records, the employee signature for June 15 is not Defendant Smith, and there is no evidence to suggest that Defendant Smith knew this record was false.

finite period of seven days. Furthermore, although Plaintiff contends the medical records are inaccurate, the undersigned cannot conclude it would have been clear to a reasonable individual that failing to provide medical supplies to the Plaintiff–when the medical records state such items were in fact supplied–was unlawful. The undersigned therefore recommends concluding that Defendant Smith is entitled to qualified immunity.

## CONCLUSION

Wherefore, it is ORDERED that Plaintiff's Motion to Amend (Dkt. No. 29) is GRANTED. The Clerk is directed to file Dkt. No. 29 as Plaintiff's Amended Complaint, and attach his original Complaint (Dkt. No. 1) to the Amended Complaint.

AND IT IS SO ORDERED.

Wherefore, it is RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 35) be GRANTED.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

February 14, 2014
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).